IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
CHARLES E. CHERRY, JOSEPH L.   )
PRYOR, AND ROBERT REYES,       )
                               )
            Plaintiffs,        )
                               )        12-cv-217
     v.                        )
                               )
CITY OF GREENSBORO,            )
                               )
            Defendant.         )
```

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

This is an employment action by Plaintiffs Charles E. Cherry ("Cherry"), Joseph L. Pryor ("Pryor"), and Robert Reyes ("Reyes") (collectively, "Plaintiffs") against the City of Greensboro ("City") arising out of their employment as officers of the Greensboro Police Department ("GPD"). All Plaintiffs allege disparate treatment and retaliatory discharge pursuant to Title VII of the Civil Rights Act of 1964 (as amended), 42 U.S.C. § 2000e et seq. ("Title VII"), and equal protection violations pursuant to 42 U.S.C. § 1983 ("section 1983"). Before the court is the City's motion to dismiss the disparate treatment and equal protection claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 8.) The court heard argument on the motion on January 15, 2013. For the reasons set

forth below, the City's motion will be granted in part and denied in part.

I. **BACKGROUND**

The complaint, construed in the light most favorable to the Plaintiffs, the non-movants, alleges the following:

Cherry is a former GPD captain, and Pryor and Reyes are former GPD line officers. Cherry and Pryor are African-American, and Reyes is Hispanic (his ancestors are from Puerto Rico). (Doc. 1 (Complaint ("Compl.")) ¶¶ 6-8.) Sometime after 2005, Cherry and Pryor filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging a racially hostile work environment. (Id. ¶ 14.)[1] Following the filing of these charges, Cherry helped Pryor and Reyes file additional grievances against the City arising from alleged racial and national origin discrimination. (Id. ¶ 16.)

Thereafter, Cherry was required by his superiors to participate in the GPD Employee Assistance Program. (Id. ¶ 22.) Cherry contends that the reason given for this requirement - that he had engaged in an inappropriate exchange with another officer - was pre-textual. (Id.) Cherry was later placed on administrative duty and required to undergo a psychological

---

[1] Cherry and Pryor are pursuing their hostile work environment claims in the related case of Alexander v. City of Greensboro, Case No. 1:09-cv-934 (M.D.N.C.), pending in this court.

2

evaluation because of the number of complaints he had made and grievances he had filed over a short time period. (Id. ¶ 25.) He was cleared to return to duty but was placed on administrative leave without pay for rule violations (id. ¶ 25-27) and terminated on August 30, 2010 (id. ¶ 27).

In 2009, the GPD investigated Pryor administratively and criminally for allegedly kicking a suspect during a chase, even though injuries Pryor sustained in apprehending the suspect physically prevented any ability to kick him. (Id. ¶ 17.) The white officers involved in the chase were never charged, although they stated that Pryor never touched the suspect. (Id.) The GPD determined that the allegations were "not sustained," and later, "unfounded." (Id. ¶ 18, 30.) Pryor filed grievances with the City related to this incident and was terminated on October 7, 2010, on the ground that he lied about signing a document related to the investigation. (Id. ¶ 30.)

In 2009, Reyes reported witnessing a white officer use excessive force against a suspect. (Id. ¶ 19.) Reyes claims that, as punishment for reporting this, he was required to ride with a white police officer, received a negative evaluation, and had disciplinary memos placed in his file. (Id.) After filing grievances with the City, he was investigated for malicious gossip and untruthfulness. (Id. ¶ 32.) Reyes was then suspended without pay, but the suspension was reduced to a

3

division-level reprimand. (Id.) Reyes was subsequently terminated for insubordination on May 2, 2011. (Id. ¶ 33.)

Plaintiffs filed this action on March 2, 2012, alleging that their race (Cherry and Pryor) and national origin (Reyes), as well as the City's retaliation for the Plaintiffs' engagement in activity protected by Title VII, were the true motivations for their termination.

**II. ANALYSIS**

Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While the complaint need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," the plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted).

When a court considers a Rule 12(b)(6) motion, the purpose is to "test[] the sufficiency of a complaint" and not to "resolve contests surrounding the facts [or] the merits of a claim." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). The court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable

4

inferences must be drawn in the plaintiff's favor, Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, so as to "nudge[] the[] claims across the line from conceivable to plausible," id. at 570; see Ashcroft v. Iqbal, 556 U.S. 662, 680 (2009).

Employment discrimination claims carry no heightened pleading standard, see Twombly, 550 U.S. at 569-70, and an employment discrimination complaint need not contain specific facts establishing a *prima facie* case, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-11 (2002); see also Chao v. Rivendell Woods, Inc., 415 F.3d 342, 346 (4th Cir. 2005). Yet the Fourth Circuit has not interpreted Swierkiewicz as removing the burden of a plaintiff to plead facts sufficient to state all the elements of his claim. Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 764-65 (4th Cir. 2003) (holding that the plaintiff failed to allege facts sufficient to support all the elements of her hostile work environment claim); see also Jordan v. Alt. Res. Corp., 458 F.3d 332, 346-47 (4th Cir. 2006) (affirming the dismissal of a discrimination claim under 42 U.S.C. § 1981 because the complaint did not allege facts supporting the assertion that race was a motivating factor in the plaintiff's termination).

A.  **Disparate Treatment Claims**[2]

1.  **Plaintiff Cherry**

To state a *prima facie* case of disparate treatment under Title VII, a plaintiff must allege membership in a protected class, satisfactory job performance, an adverse employment action, and different treatment from similarly-situated employees outside the protected class. Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010). The City moves to dismiss Cherry's Title VII claim on the ground that the complaint fails to allege facts that similarly-situated employees outside the protected class received more favorable treatment.

The only allegation in the complaint on this point states that senior white officers engaged in misconduct more serious than that engaged in by Cherry and yet were not disciplined or not disciplined as severely. (Doc. 1 (Compl.) ¶ 28.) This is no more than a mere recital of an element of the cause of action and is insufficient to survive a motion to dismiss. See Coleman, 626 F.3d at 191 (granting motion to dismiss where the

---

[2] The City argues that any effort to construe Plaintiffs' claims as alleging discriminatory discharge fails for lack of any assertion that Plaintiffs were replaced by individuals outside their protected class. See King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003) (showing the position was filled from outside the protected class is an element of a *prima facie* case for discriminatory discharge). Plaintiffs concede that they disavow any discriminatory discharge claims (Doc. 11 at 7) and reaffirmed this position at the hearing on the motion.

6

plaintiff only identified that a specific white co-worker had similar "outside business involvements" as the terminated plaintiff).

Cherry has attempted to bolster his claim by alleging that GPD Captain Janice Rogers violated the privacy of the employee personnel records of GPD officer Frances Banks (a criminal offense) but received no discipline. This allegation comes from an "EEOC Complaint (Charles E. Cherry) Continuation Sheet" attached to Plaintiffs' response brief (Doc. 11, Ex. 1). The document is dated January 31, 2011, yet Cherry's EEOC charge was not signed and filed until February 15, 2011. (Id.) Although a court can consider an EEOC charge without converting a motion to dismiss into one for summary judgment, Cherry has gone beyond the EEOC charge. See Brown v. Inst. for Family Centered Servs., 394 F. Supp. 2d 724, 729 n.2 (M.D.N.C. 2005) (although court could consider an EEOC charge for a motion to dismiss, it could not consider the plaintiff's entire EEOC file); cf. Dawson v. Shinseki, No. 3:11-700-MBS, 2012 WL 909665, at *4 (D.S.C. Mar. 16, 2012) (finding that a motion to dismiss was in fact converted to a motion for summary judgment when the defendant submitted additional documents from the administrative record as well as a termination letter).

The court is therefore left only with the general allegation made in paragraph 28 of the complaint. Because that

7

is insufficient, the City's motion to dismiss Cherry's disparate treatment claim will be granted. See Curry v. Philip Morris USA, Inc., No. 3:08cv609, 2010 WL 431692, at *3 (W.D.N.C. Feb. 4, 2010) (granting motion to dismiss when plaintiff did not "describe the alleged misconduct for which [other] individuals received no disciplinary action").

### 2.  Plaintiff Pryor

Pryor claims that a GPD investigation arising out of his alleged kicking of a suspect during an arrest was motived by race. The City argues that Pryor has failed to allege that similarly-situated officers outside the protected class were treated differently and, in any event, the investigation fails to constitute an adverse employment action.

Unlike Cherry, Pryor does point to a specific comparator incident involving other officers whom he alleges were similarly-situated employees outside the protected class but were treated differently. (Doc. 1 (Compl.) ¶ 17 (alleging that two white officers used physical force with a suspect and were not investigated, while he was investigated for allegedly doing so).) But assuming without deciding that this suffices to meet the similarly-situated prong, the City is correct that Pryor has failed to allege that he was the victim of an "adverse employment action," an essential element of a *prima facie* case

8

of disparate treatment under Title VII.  Coleman, 626 F.3d at 190.

According to Plaintiffs, the adverse employment action in this case was "the discriminatory treatment Plaintiff Pryor received during the course of the investigation and after he filed a grievance to get the initial ruling by GPD changed from 'not sustained' to 'unfounded.'" (Doc. 11 at 11.)  According to Pryor, the officer charged with investigating him attempted to conceal the fact that two white officers actually struck the suspect and that the former police chief failed to investigate Pryor's allegations against the investigating officer.  (Doc. 11, Ex. 2 (Pryor's EEOC charge).)

In Alexander v. City of Greensboro, this court found that an investigation by the GPD did not constitute an adverse employment action, particularly where the plaintiff did not allege that any concrete investigative findings were made against him that he wanted cleared or for which he received any reprimand.  762 F. Supp. 2d 764, 798 (M.D.N.C. 2011). Similarly, in this case, the only concrete findings made during the investigation at issue were that the allegations were declared "not sustained" and then "unfounded." (Doc. 1 (Compl.) ¶ 18.)  Pryor does not allege that as a result of the investigation any disciplinary measures were taken against him. Further, Plaintiffs cite no authority for the proposition that

9

discriminatory treatment during an investigation under these circumstances constitutes an adverse employment action, and the court is aware of none. Cf. Boone v. Goldin, 178 F.3d 253, 255 (4th Cir. 1999) (noting that typical adverse employment actions include "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion").[3] Accordingly, the City's motion to dismiss Pryor's disparate treatment claim will be granted.

### 3. Plaintiff Reyes

Reyes claims that he was suspended without pay for malicious gossip and untruthfulness and terminated for insubordination when other non-Hispanic employees were not. (Doc. 1 (Compl.) ¶¶ 32-34.) The City argues that Reyes fails to satisfy the "similarly situated" prong as to his claim. It contends that the only allegation in the complaint to support this claim is contained in paragraph 34, which states, generally, that "[s]imilarly situated employees of the GPD who were not black or Hispanic were not subjected to the unfounded disciplinary actions, adverse employment consequences and ultimately termination described herein." Plainly, this is

---

[3] Plaintiffs also argue that the "discriminatory investigation ultimately led to Plaintiff Pryor's termination," whereas "similarly situated white officers [] found responsible for significantly more serious violations of departmental policy" were not terminated. (Doc. 11 at 11.) This argument does not save Pryor's claim because, as previously noted, he has expressly disavowed any discriminatory discharge claim.

nothing more than a threadbare recital of an element of the cause of action.

Reyes points further to his EEOC charge, and specifically to an allegation that Assistant GPD Chief Crotts ("Crotts") is recorded on YouTube, an Internet video site, divulging confidential personnel information about Cherry and giving instructions to another officer about what evidence is needed to terminate Reyes, yet no investigation or adverse employment action was taken against Crotts. (See Doc. 11, Ex. 3 (Reyes EEOC charge).)

As noted previously, the court can rely on the allegations contained in the EEOC charge to supplement the complaint for purposes of a motion to dismiss. While the specific allegation Reyes identified in his brief is not sufficient,[4] Reyes pointed at oral argument to allegations regarding similarly-situated individuals contained in his EEOC charge. Specifically, Reyes' charge identifies white officers who were alleged to have committed violations related to untruthfulness but were not suspended without pay. For example, "Betsey Colby-Strader, a

---

[4] Specifically, Reyes fails to allege that he and Crotts are similarly situated – Reyes and Crotts have different ranks, the offenses at issue do not appear comparable, and there is no allegation that Crotts is outside the protected class. See Cepada v. Bd. of Educ. of Baltimore Cnty., 814 F. Supp. 2d 500, 513 (D. Md. 2011) (dismissing ADEA disparate treatment claim when plaintiff did not allege that he and another employee who was not disciplined "had the same supervisor or were subject to the same standard of conduct").

11

white female police officer, was alleged to have been untruthful regarding hours that she worked. The allegations were investigated but she was not requested to take a polygraph examination and she was not suspended without pay." (Doc. 11, Ex. 4 at 3.) Similarly, "Detective Corey Flowers, white male, lied under oath during a court proceeding. He was investigated for untruthfulness but never requested to take a polygraph exam nor was he suspended without pay." (Id.) Because these allegations point to line officers outside the protected class who were investigated for untruthfulness but not suspended without pay like Reyes, they are sufficient at this stage to survive a motion to dismiss. See Glaser v. Levitt, No. 98 C 210, 1998 WL 684207, at *5 (N.D. Ill. Sept. 23, 1998) (finding that plaintiff's claim survived a motion to dismiss when he alleged that non-orthodox Jewish employees with the same job title and grade, but with fewer qualifications, were promoted).

Accordingly, the City's motion to dismiss Reyes' disparate treatment claim will be denied.

**B. Equal Protection Claims**

The City also moves to dismiss the second claim for relief that alleges violations of Plaintiffs' constitutional rights (equal protection) pursuant to section 1983. The City's motion addresses only the claims of Plaintiffs Pryor and Reyes. (Doc. 8.) Invoking the maxim that justice is invoked, not dispensed,

the court will do likewise here and only consider the motion to dismiss as to those two Plaintiffs.

The elements of a section 1983 claim are that (1) the defendant "deprived plaintiff of a right secured by the Constitution and laws of the United States," and (2) the deprivation was performed under color of state law. Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). To state a *prima facie* case of race discrimination under section 1983, a plaintiff must establish the same elements as required by a disparate treatment claim under Title VII. Abel v. Dubberly, 210 F.3d 1334, 1338 (11th Cir. 2000) (citing Richardson v. Leeds Police Dep't, 71 F.3d 801, 805 (11th Cir. 1995), which recognized that Title VII and section 1983 claims have the same elements when the claims are based on the same set of facts).

To establish municipal liability under section 1983, a plaintiff must demonstrate more than *respondeat superior* liability. Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 693 n.7 (1978). A plaintiff must show (1) an official policy or custom (2) that is fairly attributable to the municipality (3) that proximately caused the deprivation of a constitutional right. Pettiford v. City of Greensboro, 556 F. Supp. 2d 512, 530 (M.D.N.C. 2008). Additionally, the plaintiff must show that the officials or employees at issue had

13

policymaking authority such that their acts constitute municipal policy. Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999).

To support their claim under section 1983, Plaintiffs point to the following allegation in the complaint: "Defendant City of Greensboro acted through its managers and policymakers, including its Chief of Police and City Manager, and the acts, decisions, edicts, and practices of those persons represent the official policies of the City of Greensboro." (Doc. 1 (Compl.) ¶ 11.) This allegation suffers from two problems.

First, this allegation is merely vague boilerplate and fails to set forth facts to make a cognizable claim plausible. Second, the Fourth Circuit has held that under the applicable City ordinance, only the City Manager and City Council have policymaking authority with respect to employer-employee relations in the City. Greensboro Prof. Fire Fighters Ass'n, Local 3157 v. City of Greensboro, 64 F.3d 962, 965 (4th Cir. 1995); Greensboro, N.C., Ordinances §§ 21-2, 21-2 (vesting the City Manager with authority to establish and administer all personnel programs and to carry out the intent of the City Council). Thus, to the extent Plaintiffs premise liability on a decision by the GPD Chief of Police, it is not cognizable.

In response to the inadequate allegations of the complaint and noting that under Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986), "municipal liability may be imposed for a

14

single decision by municipal policymakers under appropriate circumstances," Plaintiffs point further to information in the EEOC charges:  Reyes' EEOC charge alleges that he appealed his grievance of racial discrimination and retaliation to the City Manager, who reviewed the grievance and found no discrimination (Doc. 11, Ex. 4 (Reyes First EEOC charge)); Pryor's EEOC charge alleges that Pryor appealed his grievance of racial discrimination and retaliation to the City Manager, who referred it to the Assistant City Manager, who found no evidence of discrimination (Doc. 11, Ex. 2 (Pryor EEOC charge)) and that the City Manager terminated Pryor for lying about signing a document (id.).

As an initial matter, Plaintiffs' reliance on any appeal to the City Manager as to their alleged retaliatory discharge claims cannot support their section 1983 claim.  This is because "a pure or generic retaliation claim . . . simply does not implicate the Equal Protection Clause." Edwards v. City of Goldsboro, 178 F.3d 231, 250 (4th Cir. 1999) (quoting Watkins v. Bowden, 105 F.3d 1344, 1354 (11th Cir. 1997)).

As noted, the court can properly consider the information in the EEOC charge without converting a motion to dismiss into one for summary judgment. Brown, 394 F. Supp. 2d at 729 n.2. The City maintains, however, that Plaintiffs have still failed to plausibly allege that the City Manager made any different

15

decisions with respect to similarly-situated employees and that, in any event, there is no plausible basis for concluding that the City Manager's decision was the result of purposeful discrimination. At the hearing on the motion, the City also argued that there must be some evidence that the City Manager's decision reflected City policy.

To be sure, "[t]o succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Plaintiffs are obliged to support their section 1983 claim with sufficient facts demonstrating a constitutional deprivation. Schultea v. Wood, 47 F.3d 1427, 1433 (5th Cir. 1995).

In Pembaur, the Supreme Court held that a single decision by a county prosecutor, acting as the final decisionmaker, to direct county deputies to forcibly enter the petitioner's place of business to serve capiases[5] could render the county liable under section 1983. 475 U.S. at 484-85. In so holding, the Court stated that "municipal liability under § 1983 attaches

---

[5] A "capias is a writ of attachment commanding a county official to bring a subpoenaed witness who has failed to appear before the court to testify and to answer for civil contempt." 475 U.S. at 472 n.1.

16

where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Id. at 483. Since Pembaur, the Supreme Court has clarified that such a decision need not reflect implementation of a "generally applicable rule." Bd. of the Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 406 (1997) (noting that the Court has recognized a cause of action under section 1983 for a single decision by a municipal policymaker where "fault and causation were obvious in each case [and] proof that the municipality's decision was unconstitutional would suffice to establish that the municipality itself was liable for the plaintiff's constitutional injury").

The Fourth Circuit applied Pembaur in Edwards, 178 F.3d at 245, and reversed the district court's dismissal of a police officer's section 1983 claim, finding that allegations that the city manager reviewed and upheld the chief of police's decision to deny the officer an opportunity to teach a concealed handgun course were sufficient to avoid a motion to dismiss under Monell. In Edwards, the plaintiff alleged that the police chief and city manager had "condoned and ratified" actions of ten similarly-situated employees without sanctions as severe as those imposed on the plaintiff. Id. at 239-40.

17

Edwards was decided before Twombly and Iqbal, but there is no contention that the latter render the former infirm.[6] In light of Edwards, therefore, this court cannot say that Plaintiff Reyes' allegations fail to make plausible his contention of City liability for his alleged disparate treatment. Pryor's claim does not fare as well, however. Because Pryor has failed to allege that he is the victim of an adverse employment action, his constitutional claim should be dismissed as to him.[7] See Williams v. New York City Housing Auth., 335 F. App'x 108, at *2 (2nd Cir. 2009) (noting that an

---

[6] Edwards acknowledged the standard that a motion to dismiss should be granted unless "it appears certain that the plaintiff cannot prove any set of facts in support of his claim" for relief. 178 F.3d at 244. Twombly described this articulation of the standard as "best forgotten as an incomplete, negative gloss on an accepted pleading standard." 550 U.S. at 563. Edwards also went further, however, to acknowledge that dismissal would not be warranted "unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." 178 F.3d at 244 (internal quotations and citation omitted). The City has not argued that the analysis and conclusion of Edwards would not withstand the Iqbal/Twombly standard, and the court therefore declines to engage in that examination here.

[7] Pryor's claim suffers from another defect. He alleges in his EEOC charge that the City Manager never reviewed and ruled on his appeal of his grievance but rather delegated authority to the Assistant City Manager to review it. (Doc. 11, Ex. 2.) There is no indication that the City Manager delegated *policymaking* authority for the City. See Greensboro Prof. Fire Fighters Ass'n, 64 F.3d at 965-66 (indicating that policymaking authority can be delegated, but decisionmaking authority, even if final on an issue, is not necessarily policymaking authority). Thus, because the City ordinance limits policymaking authority to the City Manager, Pryor's allegations fail to make a section 1983 claim against the City plausible.

18

adverse employment action is required for section 1983 liability).

**C.   Amendment**

Plaintiffs did not move formally to amend their complaint, but the issue was raised during the hearing on their motion.

Federal Rule of Civil Procedure 15(a) provides that leave to amend should be liberally granted "when justice so requires." Leave need not be granted when, among other reasons, it would be futile. <u>Laber v. Harvey</u>, 438 F.3d 404, 426 (4th Cir. 2006) (en banc).

The court inquired at the hearing whether Plaintiffs believe they could remedy their pleading defects through amendment. As to the disparate treatment claims, Cherry's counsel argued that she believes she has evidence of comparators, based on information contained in the EEOC file. The court will therefore grant Cherry twenty days within which to file any motion to amend his allegations. As to Pryor's claims, it is apparent that any attempt to amend would be futile, because he has not suffered an adverse employment action that could be the basis of any claim. <u>See</u> <u>supra</u> Part II.A.2. Therefore, leave to amend his disparate treatment and section 1983 claims will not be granted.

**III. CONCLUSION**

For the reasons set forth above,

IT IS ORDERED that the City's motion to dismiss the Plaintiffs' Title VII disparate treatment claims (Doc. 8) is GRANTED without prejudice as to Plaintiff Cherry, who shall have twenty days within which to file any amended complaint to cure the defects noted herein; GRANTED with prejudice as to Plaintiff Pryor; and DENIED as to Plaintiff Reyes.

IT IS FURTHER ORDERED that the City's motion to dismiss the Plaintiffs' equal protection claims (Doc. 8) is GRANTED as to Plaintiff Pryor and DENIED as to Plaintiff Reyes.

/s/   Thomas D. Schroeder
United States District Judge

February 4, 2013